FILED
2013 Aug-06  AM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| JEWELL DUNCAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 6:12-CV-1649-LSC |
| | ) | |
| LEWIS WILLIS, DAVID | ) | |
| DEVILLE, TACALA, LLC, d/b/a | ) | |
| TACO BELL, formerly known as | ) | |
| TRICALA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF OPINION

I.    Introduction

In the above-entitled action, Jewell Duncan ("Plaintiff") claims that her former employer Tacala, LLC ("Tacala"), and former managers Lewis Willis ("Willis") and David Deville[1] ("Deville") (collectively, "Defendants"), created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") when Willis subjected Plaintiff to sexual harassment, and retaliated against her in violation of Title VII after she complained to management and to the EEOC about

_____

[1] The complaint in this case was filed against "David Deville," however, the parties refer to him as "David Davila" in their briefs. The Court will address him as David Deville for purposes of this opinion.

Willis' sexual harassment. Plaintiff also asserts state law claims of emotional distress and negligent hiring against the Defendants. Before the Court is the Motion for Summary Judgment (Doc. 18), filed by the Defendants following discovery. The motion has been fully briefed and is now ripe for decision.

II.     Facts[2]

Tacala owns and operates Taco Bell restaurants, including a Taco Bell restaurant located in Jasper, Alabama. Plaintiff was hired by Tacala on August 6, 2009, and was employed at all relevant times in a Team Member position. In November of 2009, Tacala completed a third-party background check on Willis that revealed no prior criminal history, then hired him as Restaurant General Manager for the Jasper Taco Bell restaurant. (Gisin Dec. ¶ 6.) Willis began managing the Jasper restaurant in January of 2010. Around the same time, Tacala assigned Deville to serve as Area Coach over multiple restaurants, including the Jasper restaurant.

Between January and July of 2010, Willis made several inappropriate comments to Plaintiff. Once, he told Plaintiff that he would not purchase an expensive

_____

[2] The facts set out in this opinion are gleaned from the parties' individual submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Valentine's gift "unless somebody gave him some." (Pla. Depo. 88:10–15.) On less than five occasions, Willis made comments about having sex with his wife. (*Id.* 90:12–91:11.) Willis told Plaintiff twice that he would like to "hit her from behind" and once that she had "big ole titties." (*Id.* 81:14–23.) Once, Willis told Plaintiff in front of her coworkers that she was too old and too big to be working in a restaurant. (*Id.* 135:20–136:20.) Finally, Willis would apparently hide employment applications in the trunk of his car, and only provide them to young females who inquired about employment at Taco Bell. (Terry Depo. 48:18–22.)

On July 28, 2010, Willis told Plaintiff that Deville did not like her dreadlocks, and that Deville did not want her on the premises, so she was terminated. That afternoon, Plaintiff called Tacala's Director of Employee Administration, Angelique Gisin ("Gisin"), and left the following message: "Good afternoon. My name is Jewell Duncan . . . . I am calling from the Jasper store. Ma'am, I need to speak with you. It is very important, thank you, ma'am." (Gisin Decl. ¶ 7; Pla. Depo. 99:17–100:22.) She eventually got in touch with someone from human resources, who told her to go back to work. (Pla. Depo. 133:6–15.)

After receiving Plaintiff's message, Tacala's human resources department performed an investigation at the Jasper restaurant in which employees were asked to

submit written statements identifying any issues they may have had in the restaurant. Plaintiff submitted a handwritten statement on July 30, 2010, alleging inappropriate treatment by Willis and Deville, but not referencing sexual harassment or any inappropriate sexual comments by Willis. Plaintiff's handwritten statement concluded with, "P.S. there is a whole lot more!!!" (Doc. 20-4 at 55.)

On September 10, 2010, Plaintiff submitted an intake questionnaire to the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, sexual harassment by Willis.  The EEOC received the questionnaire on September 15, 2010. (Doc. 20-4 at 64–70.)

A few months after Plaintiff submitted her handwritten statement to Tacala's human resources department, Willis came into the restaurant and stated that "[s]omeone has filed a sexual harassment case on me. I don't know who it is, but I'm going to find out." (Pla. Depo. 123:20–126:2.) A few minutes later, Willis informed Plaintiff, "they told me don't talk to you, you have a sexual harassment case on me." (*Id.* 129:3–8.) Thereafter, Willis selected Plaintiff more frequently to go home when the restaurant was overstaffed. (*Id.* 129: 18–22.) In October of 2010, Willis also told Plaintiff that the reason she had not received a raise was because she "didn't like to do favors." (*Id.* 157:18–22.)

On December 7, 2010, the EEOC sent Plaintiff a letter informing her that she needed to take some steps to file an EEOC charge. (Doc. 20-4 at 71.) Plaintiff followed the EEOC's instructions and filed a charge on December 17, 2010. (Doc. 20-4 at 72–75.)

Plaintiff filed the present action on April 23, 2012, alleging sexual harassment and retaliation in violation of Title VII, and emotional distress and negligent hiring under Alabama law. (Doc. 1.) Following discovery, the Defendants filed their Motion for Summary Judgment. (Doc. 18.)

III.    Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that

the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) " requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)). " A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.' " *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Discussion

    A.    Hostile Work Environment

Plaintiff alleges that she endured a hostile work environment in violation of the Title VII. Initially, the Court notes that Plaintiff brings this claim against all Defendants, not just Tacala. " [R]elief under Title VII is available against only the

employer and not against individual employees whose actions would constitute a violation of the Act." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006). Plaintiff presented no evidence that Willis and Deville were her employers. Accordingly, she cannot maintain a Title VII claim against them.

In order to prove that Tacala is liable for a hostile work environment Plaintiff must show that:

> (1) [s]he belongs to a protected group; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on [her] membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

*Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quotation marks omitted). Additionally, " [o]nly conduct that is 'based on' a protected category, such as [gender], may be considered in a hostile work environment analysis." *Id.* (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 584 (11th Cir. 2000)). " Innocuous statements or conduct, or boorish ones that do not relate to the [gender] of the actor or of the offended party (the plaintiff), are not counted." *Id.* (citation omitted).

The Defendants argue that Plaintiff cannot show that the conduct she complains of was severe or pervasive enough to alter the terms and conditions of her

employment. A determination of whether harassment is severe or pervasive enough to alter the terms and conditions of employment includes both a subjective and objective component. *Jones*, 683 F.3d at 1299. "The burden is on [P]laintiff to demonstrate that [s]he perceived, and that a reasonable person would perceive, the working environment to be hostile or abusive." *Id.* At summary judgment, the Court must accept that Plaintiff subjectively perceived that the harassment rose to this level. *Id.*

In determining whether a reasonable person would perceive the working environment to be hostile or abusive, a court must look at the totality of circumstances and consider, *inter alia*: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). Conduct is objectively severe when the workplace is permeated with intimidation, ridicule, and insult. *Id.* at 1276–77. The Supreme Court has repeatedly emphasized that simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. *See, e.g., Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S.

75, 81 (1998); *Harris*, 510 U.S. at 21–22.[3]

With that guidance in mind, the Court considers the evidence of sexual harassment presented in the instant case. Initially, much of the conduct Plaintiff alleges does not constitute "harassing conduct" to which the totality of circumstances test can be applied.[4] The remaining, harassing conduct includes Willis telling Plaintiff twice that he would like to "hit her from behind" and once that she had "big ole

_____

[3] For example, the Eleventh Circuit has found that a female plaintiff was not subjected to a sex-based hostile work environment where a male supervisor (1) told her he was "getting fired up," (2) rubbed his hip against her hip while smiling and touching her shoulder, (3) twice made a sniffing sound while looking at employee's groin area, and (4) constantly followed her and stared at her in a very obvious manner. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999), *cert. denied*, 529 U.S. 1068 (2000).

[4] First, Plaintiff argues that she was harassed when Willis told her in front of coworkers that she was too old and too big to be working in a restaurant. (Pla. Depo. 135:20–136:20.) However, Willis' comment was not sexual in nature, nor did it relate to Plaintiff's gender, and it will not be considered in evaluating Plaintiff's Title VII hostile work environment claim. *See Mendoza*, 195 F.3d at 1247–48 (circumstances surrounding an allegedly harassing comment must objectively indicate that it had a sexual or other gender-related connotation).

Next, Plaintiff argues that she was harassed because Willis would apparently hide employment applications in the trunk of his car, and only provide them to young females who inquired about employment at Taco Bell. (Terry Depo. 48:18–22.) However, Plaintiff has presented no evidence that she was aware of this hiring tactic, that it was directed at her, and this conduct would only constitute harassment based on Plaintiff's age, not her gender. *See Buckhanon v. Huff Ft Associates Const. Co., Inc.*, 506 F. Supp.2d 958, 966 (M.D. Ala. 2007) (finding that testimony of witness to racial slurs and derogatory comments by supervisor was irrelevant to hostile work environment claim where plaintiffs testified that they were not aware of the supervisor's comments).

Finally, Plaintiff argues that Tacala created a hostile work environment when it failed to address her sexual harassment complaint. However, it is undisputed that Tacala's human resources department performed an investigation in July of 2010, and there is no evidence that Plaintiff or any other employee reported sexual harassment to Tacala. Thus, Tacala's failure to address Plaintiff's complaints cannot be based on a protected category under Title VII.

titties" (Pla. Depo. 81:14–23); Willis' comment that he would not purchase an expensive Valentine's gift "unless somebody gave him some" (*id.* 88:10–15); five occasions when Willis made comments about having sex with his wife (*id.* 90:12–91:11); and Willis' comment to Plaintiff that the reason she had not received a raise was because she "didn't like to do favors." (*Id.* 157:18–22.)[5]

After resolving all reasonable doubts in favor of Plaintiff, it is clear that Willis' comments and actions were isolated and only occurred on a few occasions. The Eleventh Circuit considers an incident a week to be sufficiently frequent to bolster a plaintiff's case but considers an incident every two months to be insufficiently frequent to do so. *Compare Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (fifteen instances in four months "was not infrequent") *with Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1249 (11th Cir. 1999) (en banc) (five inappropriate instances in eleven months were "far too infrequent" to support a sexual harassment claim) and *Gupta*, 212 F.3d at 579, 584–85 (eight instances of touching, partial exposure, staring and complimenting in six or seven months, plus repeated invitations to lunch during the same period, was not frequent). Here, Plaintiff

---

[5] Plaintiff appears to admit that Willis' comment was not in reference to "sexual favors" (Pla. Depo. 157:22–158:10); however, the Court will consider this comment as sexual for the purposes of summary judgment.

alleges no more than nine instances of verbal sexual harassment over a ten month period. Since the frequency in *Gupta* exceeded one incident a month, the frequency of conduct in this case does not support Plaintiff's claim.

Additionally, Willis' sexual comments did not permeate the workplace with intimidation, ridicule, and insult. Willis never physically threatened Plaintiff. In fact, Plaintiff admits that he never touched her in a sexual manner. (Pla. Depo. 92:17–20.) Accordingly, the Court has considered the effect of these acts on the working environment, "in context, not as isolated acts," *Mendoza*, 195 F.3d at 1246, and finds that, in their totality, the alleged incidents do not satisfy the Eleventh Circuit's "baseline" for severity or pervasiveness that is required to survive summary judgment. *Id.* at 1244. Thus, Plaintiff's hostile work environment claim is due to be dismissed.[6]

B.    Retaliation

Plaintiff alleges that she was retaliated against in violation of Title VII for making complaints of sexual harassment. As previously mentioned, Plaintiff cannot maintain a Title VII claim against Willis or Deville because there is no evidence that they were her employers. *See Dearth*, 441 F.3d at 933. However, she may be able to

---

[6] Tacala also argues that Plaintiff cannot show that it is responsible for the alleged conduct. However, because the Court has determined that the conduct she complains of was not severe or pervasive enough to alter the terms and conditions of her employment, there is no need to determine whether the Defendants are entitled to a *Faragher* defense. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

maintain a retaliation claim against Tacala.

Because Plaintiff is relying exclusively on circumstantial evidence, the burden of proof in her retaliation claim is governed by the *Mcdonnell-Douglas* framework. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). The *Mcdonnell-Douglas* framework first "requires the plaintiff to create an inference of [retaliation] through her *prima facie* case." *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the employer meets this burden, the plaintiff must show that the proffered reasons were pretextual. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

Tacala maintains that it is entitled to summary judgment because Plaintiff cannot establish a *prima facie* case of retaliation, and even if she could, Tacala has a legitimate, non-retaliatory reason for its actions.

1.    *Prima Facie* Case

" A plaintiff establishes a *prima facie* case of retaliation by showing that: (1) she

'engaged in statutorily protected activity'; (2) she 'suffered a materially adverse action'; and (3) 'there was a causal connection between the protected activity and the adverse action.'" *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (citing *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010)) (emphasis added). Tacala argues that Plaintiff cannot show that she engaged in protected activity, suffered a materially adverse action, or that there was a causal connection between any protected activity and adverse action.

i.    Statutorily Protected Activity

The Eleventh Circuit has described protected activity under Title VII as follows:

> Title VII's retaliation provisions do protect certain kinds of activity. Under the opposition clause, an employer may not retaliate against an employee because the employee " has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3 (a). And, under the participation clause, an employer may not retaliate against an employee because the employee " has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* . . .
>
> The participation clause covers participation in " an investigation . . . under this subchapter," that is, an investigation under subchapter VI of Chapter 21 of Title 42 (42 U.S.C. §§ 2000e-2000e-17). 42 U.S.C. § 2000e-3(a). This clause protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC. *See*

*Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978) (stating that participation means "participation in the machinery set up by Title VII to enforce its provisions").

*E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). To demonstrate that she engaged in a protected activity under the opposition clause, Plaintiff "must show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002) (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). "It . . . is not enough for a plaintiff to allege that [her] belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Little*, 103 F.3d at 960.

In this case, Plaintiff's EEOC charge is protected by the participation clause of Title VII, as is her questionnaire. *See Eastland v. Tennessee Valley Authority*, 704 F.2d 613, 627 (11th Cir. 1983) (noting that contacting an EEO officer is protected activity). Further, Plaintiff's questionnaire is protected by the opposition clause of Title VII because her belief that she was being sexually harassed was objectively reasonable in light of Willis' purported comments.

However, none of her other complaints constitute protected activity under the

participation clause because they occurred as part of Tacala's internal, in-house investigation, conducted apart from a formal charge with the EEOC. Moreover, none of her other complaints constitute protected activity under the opposition clause because there is no evidence that Plaintiff " explicitly or implicitly communicate[d] a belief that the [conduct she complained about] constitute[d] unlawful employment discrimination." EEOC Compl. Man. (CCH) §§ 8–II–B(2) (2006); *see Crawford v. Metro. Gov't*, 555 U.S. 271 (2009) (using the EEOC manual in interpreting the opposition clause of the antiretaliation statute). Plaintiff's July 28, 2010, message with Tacala's Director of Employee Administration did not mention sexual harassment, or any unlawful treatment, and did not identify either Willis or Deville. (Pla. Depo. 99:17–100:22.) Plaintiff's July 30, 2010, statement made no reference to sexual harassment by Willis or anyone else. (Gisin Dec., ¶ 9.d; Doc. 23-1, ¶ 3.) Further, Plaintiff has presented no evidence that she ever verbally communicated her complaints about Willis' sexual harassment to Tacala.

ii.   Materially Adverse Action

A materially adverse employment decision for purposes of retaliation only requires that the employer's actions " might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe*

*Railway Co. v. White*, 548 U.S. 53, 68 (2006). In speaking of material adversity, the Supreme Court felt it " important to separate significant from trivial harms." *Id.* The Court went on to stress that the exercise of protected activity does not " immunize [an] employee from those petty slights or minor annoyances that often take place at work that all employees experience." *Id.* This Court's determination of whether the Defendants' actions were materially adverse is inherently fact-specific and " depend[s] upon the particular circumstances" of the case. *Id.* at 69. *See also Crawford v. Carroll*, 529 F.3d 961, 973 n.13 (11th Cir. 2008) (noting that *Burlington Northern* " strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions" ).

Plaintiff claims that the following events constitute materially adverse actions: (1) on July 28, 2010, Willis told Plaintiff that Deville did not like her hair and that she was terminated and (2) during the fall of 2010, Willis sent Plaintiff home when the restaurant was overstaffed more frequently. These events satisfy the *Burlington Northern* standard for materially adverse employment action. Terminating an employee is certainly a materially adverse employment action. Moreover, Willis reduced Plaintiff's hours by two every day. (Pla. Depo. 118:7–13.) Plaintiff worked four

days every week. (*Id.* 173:7–12.) This would effectively cut eight hours out of Plaintiff's

work week. Plaintiff was originally only working twenty-four hours each week. (*Id.*

173:13–19.) For an hourly employee, cutting one-third of their hours is substantial, and

could dissuade a reasonable employee from filing a charge of discrimination with the

EEOC.

iii.    Causal Connection

The Eleventh Circuit has described the causal connection requirement as

follows:

> We construe the causal link element broadly so that " a plaintiff merely
> has to prove that the protected activity and the . . . [adverse] action are
> not completely unrelated." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457,
> 1460 (11th Cir. 1998). " A plaintiff satisfies this element if [s]he provides
> sufficient evidence" of knowledge of the protected expression and " that
> there was a close temporal proximity between this awareness and the
> adverse ... action." [*Shotz v. City of Plantation, Fla.*, 344 F.3d 1180 n.3
> (11th Cir. 2003)] (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d
> 1322, 1337 (11th Cir. 1999)). A " close temporal proximity" between the
> protected expression and an adverse action is sufficient circumstantial
> evidence of a causal connection for purposes of a prima facie case. *See
> Olmsted*, 141 F.3d at 1460. We have held that a period as much as one
> month between the protected expression and the adverse action is not
> too protracted. *See* [*Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457
> (11th Cir. 1998)] (citing *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601
> (11th Cir. 1986)).
>
> The Supreme Court has stated that " mere temporal proximity between
> . . . knowledge of protected activity and an adverse . . . action . . . must be
> 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121

S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (citations omitted). The Court cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection. *See id.* (citing *Richmond v. ONEOK*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient)). If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law. In *Wascura v. City of South Miami*, we held that " Wascura failed to present evidence from which a reasonable jury could find any causal connection between Wascura's notice to the Commissioners in January 1995 of her potential need to take time off to care for her son and her subsequent termination on May 16, 1995." 257 F.3d 1238, 1248 (11th Cir. 2001)

*Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2011).

In this case, the only protected activity Plaintiff participated in was her EEOC activity, commenced in September of 2010. Plaintiff's allegations that she was terminated on July 28, 2010, cannot be causally related to Plaintiff's EEOC charge because no one at Tacala could have had knowledge that Plaintiff engaged in protected conduct. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (citation omitted). However, there is a causal connection between Plaintiff being sent home early in the fall of 2010 and her EEOC activity. Plaintiff contends that Willis, who sent Plaintiff home on several occasions when the restaurant was overstaffed, stated that " [s]omeone has filed a sexual harassment case on me. I don't know who it

is, but I'm going to find out." (Pla. Depo. 123:20–126:2.)[7] This is enough for a reasonable jury to infer that Willis harbored a retaliatory animus towards the employee that initiated the sexual harassment case. Further, Willis' comment to Plaintiff that "they told me don't talk to you, you have a sexual harassment case on me" demonstrates that he had knowledge that Plaintiff was the employee that initiated the sexual harassment case against him. (*Id.* 129:3–8.) This is sufficient evidence to prove that the reduction of Plaintiff's working hours and her EEOC intake questionnaire complaining about sexual harassment were not completely unrelated.

### 2.    Legitimate, Non-Retaliatory Reasons

Because Plaintiff has met her burden of demonstrating a *prima facie* case based on the reduction of Plaintiff's working hours, the burden shifts to Tacala to articulate a legitimate, non-retaliatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253. Tacala contends that Plaintiff was "sent home early on a few occasions when the restaurant was overstaffed." (Doc. 19 at 24.) Accordingly, Tacala has articulated a legitimate, non-retaliatory reason for sending Plaintiff home early, and Plaintiff must now show that the proffered reason was pretextual. *Hicks*, 509 U.S.

---

[7] Resolving all reasonable doubts in favor of Plaintiff, it is possible that the EEOC initiated an investigation after Plaintiff submitted her questionnaire, making Willis aware of Plaintiff's complaints, and this was the "sexual harassment case" he was referring to.

at 511.

### 3. Pretext

To establish pretext, Plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). "A reason is not pretext for [retaliation] unless it is shown both that the reason was false, and that [retaliation] was the real reason." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation marks and citation omitted). Plaintiff can meet her burden "either directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* When determining whether Tacala's proffered reason for sending Plaintiff home early was pretextual, it is the motive of the decisionmaker–Willis in this case–in selecting Plaintiff more frequently that is at issue. *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989).

Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could infer that Willis harbored a retaliatory animus based on his statement that he was "going to find out" who filed a sexual harassment case against him. (Pla. Depo. 123:20–126:2.) Further, a reasonable jury could find that a retaliatory reason more

likely motivated Willis in selecting Plaintiff to go home early because he was clearly aware that it was Plaintiff who complained based on his conversation with her (*Id.* 129:3–8), and he selected Plaintiff to go home early more frequently only after this conversation. (*Id.* 129: 18–22.) Accordingly, there is sufficient circumstantial evidence from which a jury could reasonably infer that Tacala's articulated reasons are a pretext for retaliation.

C.     Emotional Distress

Plaintiff alleges that the Defendants' conduct caused her emotional distress. Concerning the tort of intentional infliction of emotional distress, or outrage, the Supreme Court of Alabama has held:

> The tort of outrage is an extremely limited cause of action. It is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context, *Whitt v. Hulsey*, 519 So. 2d 901 (Ala. 1987); (2) barbaric methods employed to coerce an insurance settlement, *National Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133 (Ala. 1983); and (3) egregious sexual harassment, *Busby v. Truswal Sys. Corp.*, 551 So.2d 322 (Ala.1989). See also Michael L. Roberts and Gregory S. Cusimano, *Alabama Tort Law*, § 23.0 (2d ed. 1996). In order to recover, a plaintiff must demonstrate that the defendant's conduct " (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990).

*Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000). In determining whether the alleged

conduct was extreme and outrageous, " plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind." *Surrency v. Harbison*, 489 So.2d 1097, 1105–06 (Ala. 1986) (quoting Restatement (Second) of Torts, § 46, Comment (d) (1965)).

In this case, Plaintiff has alleged that Willis made several inappropriate comments to her (Pla. Depo. 81:14–23, 88:10–15, 90:12–91:11, 157:18–22), attempted to terminate her because of her hair style (Terry Depo. 44:20–45:13), and sent her home more frequently in retaliation for filing a complaint against him. (*Id.* 129: 18–22.) However, Plaintiff admits that Willis never touched her in a sexual manner. (*Id.* 92:17–20.) These allegations wholly fail to establish conduct " so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Service Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980). *See also O' Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011) (outrage judgment affirmed where family physician provided teenage boy with addictive prescription drugs in exchange for sex); *Busby v. Truswal Systems Corp.*, 551 So. 2d 322 (Ala. 1989) (outrage claim cognizable where supervisor made several inappropriate sexual comments and gestures to plaintiffs, attempted to

follow one of the plaintiffs into the restroom to "help her," followed another plaintiff one night, openly stared at the plaintiffs' sexual anatomy, and put his arm around the plaintiffs, grabbed their arms, and stroked their necks). While sexual harassment is inappropriate in the workplace and has no place in civilized society, the comments purportedly made by Willis cannot be said to "go beyond all possible bounds of decency." *Surrency*, 489 So. 2d at 1105–06.

D.    Negligent Hiring

Plaintiff claims that the Defendants were negligent in hiring Willis. However, because the evidence clearly demonstrates that only Tacala hired Willis, this claim may only be brought against Tacala. To establish a negligent hiring claim, Plaintiff must show "by affirmative proof that the alleged incompetence of the employee was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence." *Portera v. Winn Dixie*, 996 F.Supp. 1418, 1437 (M.D. Ala. 1998). *See Gilmer v. Crestview Mem. Funeral Home, Inc.*, 35 So. 3d 585, 596 (Ala. 2009) ("To prove a claim of negligent [hiring], a plaintiff must show that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent."); *Rhodes v. Arc of Madison County, Inc.*, 2013 WL 366176 (N.D. Ala. Jan. 25, 2013) ("Thus, the requirement that a defendant have actual or constructive

knowledge of an employee's unfitness applies to claims for negligent hiring.").

Plaintiff has not provided sufficient evidence to establish that Tacala knew or should have known that prior complaints of sexual harassment had been made against Willis. Moreover, Plaintiff admits she has no knowledge about whether anyone ever alleged that Willis had engaged in sexual harassment or misconduct at any of his prior places of employment. (Pla. Depo. 137:21–139:11.) Although Plaintiff heard that Willis was terminated from Ryan's restaurant for getting into a fight (*Id.* 138:8–15), this does not relate to sexual harassment—Willis' underlying wrongful conduct. *See Voyager Ins. Companies v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003) ("A party alleging negligent . . . hiring must also prove the underlying wrongful conduct of employees."); *Jones Exp., Inc. v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010) ("[I]mplicit in the tort of negligent hiring, retention, training, and supervision is the concept that, as a consequence of the employee's incompetence, the employee committed some sort of act, wrongdoing, or tort that caused the plaintiff's injury.").

V.    Conclusion

For the aforementioned reasons, the Defendants' Motion for Summary Judgment is due to be GRANTED in part and DENIED in part. The Defendants' request to dismiss Plaintiff's hostile work environment, emotional distress, and

negligent hiring claims, and Willis and Deville's request to dismiss Plaintiff's retaliation claim is due to be GRANTED. Tacala's request to dismiss Plaintiff's retaliation claim is due to be DENIED. The only claim remaining will be Plaintiff's Title VII retaliation claim against Tacala. A separate order consistent with this opinion will be entered.

Done this 5th day of August 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

171032